11/27/2012 TUE 16:18  FAX 606 633 5533 Whitesburg Women Clinic



FILED
MARGARET S. BERGLS, CLERK
NOV 2 6 2012
LETCHER CIRCUIT DISTRICT COURTS
BY _____ D.C.

## LETCHER CIRCUIT COURT
### DIVISION _____
### CIVIL ACTION NO.: 12-CI-004-02

JACQUELINE FOUTS                                    PLAINTIFFS
BRADLEY FOUTS
107 Eldridge Lane
Cumberland, KY 40823

v.                          **COMPLAINT**

NATHAN WADE BAKER, M.D.
214 Hospital Road, Suite D
Whitesburg, KY 41858

    Serve: 214 Hospital Road, Suite D
           Whitesburg, KY 41858
           *Via Certified Mail*

-and-

WHITESBURG WOMEN'S CENTER, LLC                      DEFENDANTS
P.O. Box 710
Whitesburg, KY 41858

    Serve: Dr. Nathan Wade Baker
           214 Hospital Road, Suite D
           Whitesburg, KY 41858
           *Via Certified Mail*

-and-

APPALACHIAN REGIONAL HEALTHCARE, INC.
d/b/a WHITESBURG ARH HOSPITAL
d/b/a ARH WHITESBURG CLINIC
2285 Executive Drive
Lexington, KY 40505

    Serve: Rick King
           ARH System Center-Hazard
           100 Airport Gardens Rd.
           Hazard, KY 41701
           *Via Certified Mail*



# Exhibit A

1448 Gardiner Lane, Suites 301-303 • Louisville, KY 40213 • tel: 502.459.7555 fax: 502.451.1698

**** **** ****

Come the Plaintiffs, Jacqueline Fouts and Bradley Fouts, by counsel, and for their cause of action against the Defendants, state as follows:

1. Plaintiffs Jacqueline and Bradley Fouts reside in the Commonwealth of Kentucky, Harlan County, at 197 Eldridge Lane. At all times mentioned herein, Plaintiffs Jacqueline and Bradley Fouts were, and continue to be, lawfully married.

2. Defendant Whitesburg Women's Center, LLC was at all times stated herein a limited liability company organized and existing under the laws of the Commonwealth of Kentucky, engaged in the practice of surgery and medical care, whose principal place of business is 214 Hospital Road, Suite D, Whitesburg, Kentucky 41858, and whose registered agent for service of process is Dr. Nathan Wade Baker at 214 Hospital Road, Suite D in Whitesburg, KY 41858.

3. At all times mentioned herein, the Defendant Nathan Wade Baker, MD, was and is a practicing physician licensed under the laws of the Commonwealth of Kentucky and engaged in the practice of general and gynecological surgery and the provision of medical care.

4. At all times mentioned herein, Defendant Appalachian Regional Healthcare, Inc. (d/b/a Whitesburg ARH Hospital and, also d/b/a ARH Whitesburg Clinic) was and continues to be a corporation organized and existing under the laws of the Commonwealth of Kentucky, engaged in the business of operating hospitals and clinics which provide medical care for persons who are patients within the hospital or other treatment facilities operated by the Defendant. Appalachian Regional Healthcare Inc.'s principal place of business is 2285 Executive Drive, Lexington, KY 40505 and its registered agent for service

2

of process is Rick King, ARH System Center-Hazard, 100 Airport Gardens Rd. in Hazard, KY 41701.

5. At all times mentioned herein Defendant Appalachian Regional Healthcare, Inc. operated a hospital known as Whitesburg ARH Hospital at 240 Hospital Road, Whitesburg, KY 41858 and a clinic known as ARH Whitesburg Clinic at 226 Medical Plaza Lane, Suite 40, Whitesburg, KY.

6. The acts of negligence hereinafter alleged against the Defendants Whitesburg Women's Center, LLC, Nathan Wade Baker, MD, and Appalachian Regional Healthcare, Inc. occurred and/or were performed in Letcher County, Kentucky.

7. On or about December 9, 2011, Dr. Nathan Wade Baker, Whitesburg Women's Center, LLC, and Appalachian Regional Healthcare, Inc. held, individually and/or collectively, themselves out as competent providers of healthcare services. Dr. Nathan Wade Baker did in fact, on December 9, 2011, render health care services to Plaintiff Jacqueline Fouts and thereby entered into a patient-physician relationship with Jacqueline Fouts.

8. At all times relevant herein, Defendant Whitesburg Women's Center, LLC, acted directly through its actual, implied, and/or apparent agents, servants and employees, all whom acted within the scope of his or her employment or agency.

9. At all times relevant herein, Defendant Appalachian Regional Healthcare, Inc., acted directly through its actual, implied, and/or apparent agents, servants and employees, all whom acted within the scope of his or her employment or agency.

10. At all times relevant herein, Defendant Nathan Wade Baker, MD, acted individually and through his agents, servants and employees, and /or as the actual, implied

3

and/or apparent agent, servant or employee of Whitesburg Women's Center, LLC and/or Appalachian Regional Healthcare, Inc, within the scope of his employment or agency.

11. At all times relevant, all of the Defendants were acting as authorized, actual, implied, and/or apparent agents, servants, and/or employees of each other.

12. On or about December 9, 2011, Plaintiff Jacqueline Fouts presented to Dr. Nathan Wade Baker to undergo laparoscopic bilateral tubal ligation at the hospital owned and operated by Appalachian Regional Healthcare and d/b/a Whitesburg ARH Hospital at 240 Hospital Road, Whitesburg, KY 41858.

13. On December 9, 2011, Defendant Nathan Wade Baker, MD, Whitesburg Women's Center, LLC and Appalachian Regional Healthcare, Inc. rendered medical treatment and services, either directly or through their agents, servants, or employees, including Dr. Nathan Wade Baker.

14. In rendering medical treatment and services to the Plaintiff, Jacqueline Fouts, on December 9, 2011, the Defendants failed to exercise the degree of care and skill of, and/or as would be expected of, an ordinarily prudent or reasonably competent healthcare provider under like or similar circumstances, which caused and/or was a substantial factor in causing Plaintiff Jacqueline Fouts to sustain severe and permanent injuries.

15. As a direct and proximate result of the negligence of the Defendants described above, Plaintiff Jacqueline Fouts sustained permanent injuries, both physical and mental in kind and/or nature, and in the future will incur physical and mental pain and suffering.

16. As a direct and proximate result of the negligence of the Defendants described above, Plaintiff Jacqueline Fout's power to labor and earn money has been impaired.

17. As a direct and proximate result of the negligence of the Defendants described

4

17. As a direct and proximate result of the negligence of the Defendants described above, it was necessary for Plaintiff Jacqueline Fouts to secure the services of physicians and health care providers and in the future she will require the services of physicians and health care providers. Plaintiff has incurred medical costs and will incur medical costs in the future as a result of the Defendants' negligence.

18. As a direct and proximate result of the negligence of the Defendants described above, Plaintiff Jacqueline Fouts is at an increased risk for future medical complications.

19. As a direct and proximate result of the negligence of the Defendants described above, Plaintiff Bradley Fouts was caused to lose the companionship, services, love, affection, consortium, and society of his wife, Jacqueline Fouts, and has and will suffer damages as a result.

20. The damages claimed herein are in excess of the amount necessary to establish jurisdiction in this Court.

WHEREFORE, Plaintiffs Jacqueline and Bradley Fouts, by counsel, demand as follows:

1. Judgment against the Defendants Nathan Wade Baker, MD, Whitesburg Women's Center, LLC, and Appalachian Regional Healthcare, Inc. in such amounts which will fairly and reasonably compensate Plaintiffs for the damages alleged herein;

2. Prejudgment interest;

3. Post judgment interest;

4. Attorneys fees and court costs reasonably incurred or expended;

5. Trial by jury; and,

5

6. Punitive damages to the extent a trier of fact determines the actions of the Defendant to have been malicious, oppressive, fraudulent, or reckless; and,

7. All just and proper relief to which he may appear entitled, including the right to amend this Complaint.

Respectfully Submitted,

COOPER & FRIEDMAN, PLLC

Michael T. Cooper
1448 Gardiner Lane
Suites 301-303
Louisville, Kentucky 40213
(502) 459-7555; fax (502) 451-1698
mtc@cooperandfriedman.com
*Counsel for Plaintiffs*

6

MAY-09-2013  11:30AM  FROM-                                                    T-882  P.003/004  F-731

| AOC-105 | | |Case No.___12-CI-402_ |
| 5-90 | | | |
| | | |Court___CIRCUIT_ |
| Commonwealth of Kentucky | | | |
| Court of Justice | | |County__LETCHER_ |
| CR 4.02; CR Official Form | **CIVIL SUMMONS** | |

JACQUELINE FOUTS                                                    **PLAINTIFFS**
BRADLEY FOUTS
107 Eldridge Lane
Cumberland, KY 40823

VS.

NATHAN WADE BAKER, M.D.                                             **DEFENDANT**
214 Hospital Road, Suite D
Whitesburg, KY 41858

     Serve:  Nathan Wade Baker, M.D.
              214 Hospital Road, Suite D
              Whitesburg, KY 41858
              *Via Certified Mail*

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANTS:

    You are hereby notified that a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this summons. Unless a written defense is made by you or by an attorney in you behalf within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

    The name(s) and address(es) of the party or parties demanding such relief against you or his (their) attorney(s) are shown on the document delivered to you with this summons.

Date:_____11-26-2012_____          Clerk:__Margaret S Nichol_____

                           By:___J S. Rathiff_____ D.C.

**PROOF OF SERVICE**  7001-2660-0003-2148-0665

This summons was served by delivering a true copy and the complaint (or other initiating document) to:

_____

This _____ day of _____, 20____.

                                Served By:_____

| AOC-105<br>5-90<br><br>Commonwealth of Kentucky<br>Court of Justice<br><br>CR 4.02; CR Official Form | | CIVIL SUMMONS | Case No. 12-CI-402<br><br>Court____CIRCUIT____<br><br>County___LETCHER___ |

JACQUELINE FOUTS                                                          PLAINTIFFS
BRADLEY FOUTS
107 Eldridge Lane
Cumberland, KY 40823

VS.

WHITESBURG WOMEN'S CENTER, LLC                                            DEFENDANT
P.O. Box 710
Whitesburg, KY 41858

     Serve:  Nathan Wade Baker, M.D.
           214 Hospital Road, Suite D
           Whitesburg, KY 41858
           *Via Certified Mail*

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANTS:

     You are hereby notified that a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this summons. Unless a written defense is made by you or by an attorney in you behalf within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

     The name(s) and address(es) of the party or parties demanding such relief against you or his (their) attorney(s) are shown on the document delivered to you with this summons.

Date:___11-21-2012___       Clerk:__Margaret S. Nichols__

                   By:__J Scott Iff_____D.C.

**PROOF OF SERVICE**   7007-3620-0002-2148-2680

This summons was served by delivering a true copy and the complaint (or other initiating document) to:

_____

This_____day of_____, 20____.

                    Served By:_____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

12-CI-402

SERVE:
NATHAN WADE BAKER, M.D.
214 HOSPITAL ROAD, SUITE D
WHITESBURG, KY 41858

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

NOV 2 8 2012

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7007 2680 0002 2148 6658

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

12-CI-402

SERVE:
NATHAN WADE BAKER, M.D.
214 HOSPITAL ROAD, SUITE D
WHITESBURG, KY 41858

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

NOV 2 8 2012

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7007 2680 0002 2148 6665

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

COMMONWEALTH OF KENTUCKY
47TH JUDICIAL CIRCUIT
LETCHER CIRCUIT COURT
CIVIL ACTION NO.  12-CI-00402

JACQUELINE FOUTS
And BRADLEY FOUTS,                                                PLAINTIFFS,


VS.                                  ANSWER


NATHAN WADE BAKER, M.D.;
WHITESBURG WOMEN'S CENTER, LLC;
And
APPALACHIAN REGIONAL HEALTHCARE, INC.
D/B/A WHITESBURG ARH HOSPITAL
D/B/A ARH WHITESBURG CLINIC,                        DEFENDANTS.

*     *     *     *     *

Comes the Defendant, WHITESBURG WOMEN'S CENTER, LLC;

by and through counsel, and for their Answer to the Complaint, states

as follows:

That the Complaint should be dismissed on the grounds that it

fails to state a claim on behalf of each Plaintiff in this action for which

the Court can properly grant relief.

1.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

is without sufficient knowledge to admit or deny the allegations

Page 1 of 8

contained in Paragraph No. 1 of the Complaint filed herein.

2.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,
denies the allegations contained in Paragraph No. 2 of the Complaint
filed herein and states that the Defendant, WHITESBURG WOMEN'S
CENTER, LLC, did not begin operations until September 27, 2012.

3.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,
admits the allegations contained in Paragraph No. 3 of the Complaint
filed herein.

4.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,
is without sufficient knowledge to admit or deny the allegations
contained in Paragraph No. 4 of the Complaint filed herein.

5.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,
is without sufficient knowledge to admit or deny the allegations
contained in Paragraph No. 5 of the Complaint filed herein.

6.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,
denies the allegations contained in Paragraph No. 6 of the Complaint
filed herein.

7.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

denies the allegation contained in Paragraph 7 of the Complaint filed

herein and states that the Defendant, WHITESBURG WOMEN'S

CENTER, LLC, was not in operation on December 9, 2011 and this

Defendant is without knowledge to admit or deny the remaining

allegations contained in Paragraph 7 of the Complaint.

8.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

denies the allegations contained in Paragraph No. 8 of the Complaint

filed herein.

9.     The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

is without sufficient knowledge to admit or deny the allegations

contained in Paragraph No. 9 of the Complaint filed herein.

10.    The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

denies the allegations contained in Paragraph No. 10 of the Complaint

filed herein and states that Dr. Nathan Wade Baker was not acting as

an agent of the Whitesburg Women's Center LLC on December 9, 2011.

11.    The Defendant, WHITESBURG WOMEN'S CENTER, LLC,

denies the allegations contained in Paragraph No. 11 of the Complaint

filed herein and states that no Defendant named herein was acting as

agent or employee of Whitesburg Women's Center, LLC.

12.   The Defendant, WHITESBURG WOMEN'S CENTER, LLC, admits the allegations contained in Paragraph No. 12 of the Complaint filed herein in as much as that on or about December 9, 2011, the Plaintiff, Jacqueline Fouts, was a patient of Dr. Nathan Wade Baker at the hospital owned and operated by ARH Healthcare, Inc. d/b/a Whitesburg ARH Hospital d/b/a ARH Whitesburg Clinic, but lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations.

13.   The Defendant, WHITESBURG WOMEN'S CENTER, LLC, is without sufficient knowledge to admit or deny the allegations contained in Paragraph Nos. 13, 14, 15, 16, 17, 18, 19, and 20 of the Complaint filed herein.

14.   The Defendant, WHITESBURG WOMEN'S CENTER, LLC, denies each and every other, statement, allegation and demand contained in the complaint not heretofore expressly admitted.

15.   The Defendant, WHITESBURG WOMEN'S CENTER, LLC, states that the Plaintiff, JACQUELINE FOUTS, was herself guilty of

carelessness and negligence but for the said carelessness and negligence of JACQUELINE FOUTS, the alleged injuries and damages complained of would not have occurred. The carelessness and negligence of the Plaintiff, JACQUELINE FOUTS, bars either in whole or in part, the claims of all of the Plaintiffs herein.

16.    The claims of the Plaintiffs herein are barred either in whole or in part by reason of JACQUELINE FOUTS failing to mitigate damages.

17.    The claims of the are barred either in whole or in part by reason of the contributory negligence of Bradley Fouts.

18.    The claims of the Plaintiff are barred herein either in whole or in part by reason of the failure of Bradley Fouts to mitigate damages.

19.    That if in fact, the Plaintiffs in this action were damaged, by reason of some act or carelessness or negligence or deviation from a recognized standard of care that such injuries and damages were the result of some act or omission on the part of a party or parties not

presently before the Court and not the result of any act or omission on the part of these answering Defendants.

20.    The injuries complained of by Plaintiffs in the complaint is a result of an intervening and superseding cause for which these Defendants have no responsibility as a matter of law.

21.    The injuries to JACQUELINE FOUTS were the result of a pre-existing condition unrelated to any act or omission on the part of the Defendants herein and for which they are not responsible as a matter of law.

22.    The facts and circumstances of this case do not warrant the imposition of punitive damages.

23.    An award of punitive damages in this case would serve to unconstitutionally deprive one or both Defendants of their rights to due process of law in violation of the Constitution of the United States of America and the Commonwealth of Kentucky.

24.    The Defendant, WHITESBURG WOMEN'S CENTER, LLC, adopt and incorporate by reference herein as if set out at length each

and every term and provision of the Kentucky punitive damage statutes as a complete and affirmative defense to this action.

25.   Bradley Fouts has no cause of action against the Defendants herein as a matter of law.

**WHEREFORE,** this Defendant, WHITESBURG WOMEN'S CENTER, LLC, having fully answer the Plaintiffs' Complaint, respectfully demands the following relief:

1.   The Plaintiffs' Complaint be dismissed and held for naught;

2.   For their costs herein expended, including reasonable attorney fees; and

3.   For any and all other relief to which they may appear entitled.

This the ___11___ day of December, 2012.

_____

KELLIE D. WILSON, ESQ.
103 N. First Street, Suite 301
P.O. Box 1470
Harlan, KY 40831
Tele: (606) 573-6110
Fax: (606) 573-2346
Email: kelliewilson@harlanonline.net

Page 7 of 8

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this ____11____ day of December, 2012 to the following:

Michael T. Cooper
1448 Gardiner Lane
Suite 301-303
Louisville, KY  40213

Nathan Wade Baker, M.D.
214 Hospital Road
Suite D
Whitesburg, KY  41858

Rick King
ARH System Center
100 Airport Gardens Road
Hazard, KY  41701

KELLIE D. WILSON
WHITESBURG WOMEN'S CENTER, LLC

Page **8** of **8**

COMMONWEALTH OF KENTUCKY
47TH JUDICIAL CIRCUIT
LETCHER CIRCUIT COURT
CIVIL ACTION NO.  12-CI-00402

FILED
MARGARET S. NICHOLS, CLERK
DEC 1 2 2012
LETCHER CIRCUIT DISTRICT COURTS
D.C.

JACQUELINE FOUTS
And BRADLEY FOUTS,                                    PLAINTIFFS,


VS.                          ANSWER


NATHAN WADE BAKER, M.D.;
WHITESBURG WOMEN'S CENTER, LLC;
And
APPALACHIAN REGIONAL HEALTHCARE, INC.
D/B/A WHITESBURG ARH HOSPITAL
D/B/A ARH WHITESBURG CLINIC,              DEFENDANTS.

*     *     *     *     *

Comes the Defendant, NATHAN WADE BAKER, M.D., by and

through counsel, and for their Answer to the Complaint, states as

follows:

That the Complaint should be dismissed on the grounds that it

fails to state a claim on behalf of each Plaintiff in this action for which

the Court can properly grant relief.

1.     The Defendant, NATHAN WADE BAKER, M.D., is without

sufficient knowledge to admit or deny the allegations contained in

Page 1 of 8

Paragraph No. 1 of the Complaint filed herein.

2.      The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 2 of the Complaint filed herein and states that the  Defendant, WHITESBURG WOMEN'S CENTER, LLC, did not begin operations until September 27, 2012.

3.      The Defendant, NATHAN WADE BAKER, M.D., admits the allegations contained in Paragraph No. 3 of the Complaint filed herein.

4.      The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 4 of the Complaint filed herein.

5.      The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 5 of the Complaint filed herein.

6.      The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 6 of the Complaint filed herein.

7.      The Defendant, NATHAN WADE BAKER, M.D., denies the allegation contained in Paragraph 7 of the Complaint filed herein and states that the Defendant, WHITESBURG WOMEN'S CENTER, LLC,

was not in operation on December 9, 2011 and this Defendant is without knowledge to admit or deny the remaining allegations contained in Paragraph 7 of the Complaint.

8.     The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 8 of the Complaint filed herein.

9.     The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 9 of the Complaint filed herein.

10.     The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 10 of the Complaint filed herein and states that he was not acting as an agent of the Whitesburg Women's Center LLC on December 9, 2011.

11.     The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 11 of the Complaint filed herein.

12.     The Defendant, NATHAN WADE BAKER, M.D., admits the allegations contained in Paragraph No. 12 of the Complaint filed herein in as much as that on or about December 9, 2011, the Plaintiff, Jacqueline Fouts, was a patient of his at the hospital owned and

operated by ARH Healthcare, Inc. d/b/a Whitesburg ARH Hospital d/b/a ARH Whitesburg Clinic, but lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations.

13.    The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph Nos. 13, 14, 15, 16, 17, 18, 19 and 20 of the Complaint filed herein.

14.    The Defendant, NATHAN WADE BAKER, M.D., denies each and every other, statement, allegation and demand contained in the complaint not heretofore expressly admitted.

15.    The Defendant, NATHAN WADE BAKER, M.D., states that the Plaintiff, JACQUELINE FOUTS, was herself guilty of carelessness and negligence but for the said carelessness and negligence of JACQUELINE FOUTS, the alleged injuries and damages complained of would not have occurred. The carelessness and negligence of the Plaintiff, JACQUELINE FOUTS,  bars either in whole or in part, the claims of all of the Plaintiffs herein.

16.   The claims of the Plaintiffs herein are barred either in whole or in part by reason of JACQUELINE FOUTS failing to mitigate damages.

17.   The claims of the are barred either in whole or in part by reason of the contributory negligence of Bradley Fouts.

18.   The claims of the Plaintiff are barred herein either in whole or in part by reason of the failure of Bradley Fouts to mitigate damages.

19.   That if in fact, the Plaintiffs in this action were damaged, by reason of some act or carelessness or negligence or deviation from a recognized standard of care that such injuries and damages were the result of some act or omission on the part of a party or parties not presently before the Court and not the result of any act or omission on the part of these answering Defendants.

20.   The injuries complained of by Plaintiffs in the complaint is a result of an intervening and superseding cause for which these Defendants have no responsibility as a matter of law.

21.    The injuries to JACQUELINE FOUTS were the result of a pre-existing condition unrelated to any act or omission on the part of the Defendants herein and for which they are not responsible as a matter of law.

22.    The facts and circumstances of this case do not warrant the imposition of punitive damages.

23.    An award of punitive damages in this case would serve to unconstitutionally deprive one or both Defendants of their rights to due process of law in violation of the Constitution of the United States of America and the Commonwealth of Kentucky.

24.    The Defendant, NATHAN WADE BAKER, M.D., adopts and incorporates by reference herein as if set out at length each and every term and provision of the Kentucky punitive damage statutes as a complete and affirmative defense to this action.

25.    Bradley Fouts has no cause of action against the Defendants herein as a matter of law.

**WHEREFORE,** this Defendant, NATHAN WADE BAKER, M.D., having fully answered the Plaintiffs' Complaint, respectfully demands the following relief:

1.     The Plaintiffs' Complaint be dismissed and held for naught;

2.     For his costs herein expended, including reasonable attorney fees; and

3.     For any and all other relief to which he may appear entitled.

This the ___11___ day of December, 2012.

KELLIE D. WILSON, ESQ.
103 N. First Street, Suite 301
P.O. Box 1470
Harlan, KY  40831
Tele:  (606)  573-6110
Fax:  (606)  573-2346
Email:  kelliewilson@harlanonline.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this ___11___ day of December, 2012 to the following:

Michael T. Cooper
1448 Gardiner Lane
Suite 301-303
Louisville,  KY   40213

Rick King
ARH System Center
100 Airport Gardens Road
Hazard,  KY  41701

KELLIE D. WILSON
WHITESBURG WOMEN'S CENTER, LLC

MAY-09-2013  03:25PM  FROM-                                    T-887  P.007/008  F-737

FILED
MARGARET S. NICHOLS, CLERK
DEC 1 4 2012
LETCHER CIRCUIT DISTRICT COURTS
BY_____ D.C.

# COMMONWEALTH OF KENTUCKY
## 47TH JUDICIAL CIRCUIT
## LETCHER CIRCUIT COURT
### CIVIL ACTION NO.  12-CI-00402

JACQUELINE FOUTS                                          PLAINTIFFS,
And BRADLEY FOUTS,


VS.                          AMENDED ANSWER


NATHAN WADE BAKER, M.D.;
WHITESBURG WOMEN'S CENTER, LLC;
And
APPALACHIAN REGIONAL HEALTHCARE, INC.
D/B/A WHITESBURG ARH HOSPITAL
D/B/A ARH WHITESBURG CLINIC,                         DEFENDANTS.

                    *    *    *    *    *

Comes the Defendant, NATHAN WADE BAKER, M.D., by and

through counsel, and for their Answer to the Complaint, states as

follows:

That the Complaint should be dismissed on the grounds that it

fails to state a claim on behalf of each Plaintiff in this action for which

the Court can properly grant relief.

1.    The Defendant, NATHAN WADE BAKER, M.D., is without

sufficient knowledge to admit or deny the allegations contained in

Page 1 of 8

Paragraph No. 1 of the Complaint filed herein.

    2.    The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 2 of the Complaint filed herein and states that the Defendant, WHITESBURG WOMEN'S CENTER, LLC, did not begin operations until September 27, 2012.

    3.    The Defendant, NATHAN WADE BAKER, M.D., admits the allegations contained in Paragraph No. 3 of the Complaint filed herein.

    4.    The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 4 of the Complaint filed herein.

    5.    The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 5 of the Complaint filed herein.

    6.    The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 6 of the Complaint filed herein.

    7.    The Defendant, NATHAN WADE BAKER, M.D., denies the allegation contained in Paragraph 7 of the Complaint filed herein and states that the Defendant, WHITESBURG WOMEN'S CENTER, LLC,

was not in operation on December 9, 2011 and this Defendant is without knowledge to admit or deny the remaining allegations contained in Paragraph 7 of the Complaint.

8.     The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 8 of the Complaint filed herein.

9.     The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph No. 9 of the Complaint filed herein.

10.    The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 10 of the Complaint filed herein and states that he was not acting as an agent of the Whitesburg Women's Center LLC on December 9, 2011.

11.    The Defendant, NATHAN WADE BAKER, M.D., denies the allegations contained in Paragraph No. 11 of the Complaint filed herein.

12.    The Defendant, NATHAN WADE BAKER, M.D., admits the allegations contained in Paragraph No. 12 of the Complaint filed herein in as much as that on or about December 9, 2011, the Plaintiff, Jacqueline Fouts, was a patient of his at the hospital owned and

operated by ARH Healthcare, Inc. d/b/a Whitesburg ARH Hospital d/b/a ARH Whitesburg Clinic, but lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations.

13.    The Defendant, NATHAN WADE BAKER, M.D., is without sufficient knowledge to admit or deny the allegations contained in Paragraph Nos. 13, 14, 15, 16, 17, 18, 19 and 20 of the Complaint filed herein.

14.    The Defendant, NATHAN WADE BAKER, M.D., denies each and every other, statement, allegation and demand contained in the complaint not heretofore expressly admitted.

15.    The Defendant, NATHAN WADE BAKER, M.D., states that the Plaintiff, JACQUELINE FOUTS, was herself guilty of carelessness and negligence but for the said carelessness and negligence of JACQUELINE FOUTS, the alleged injuries and damages complained of would not have occurred. The carelessness and negligence of the Plaintiff, JACQUELINE FOUTS,  bars either in whole or in part, the claims of all of the Plaintiffs herein.

16.    The claims of the Plaintiffs herein are barred either in whole or in part by reason of JACQUELINE FOUTS failing to mitigate damages.

17.    The claims of the are barred either in whole or in part by reason of the contributory negligence of Bradley Fouts.

18.    The claims of the Plaintiff are barred herein either in whole or in part by reason of the failure of Bradley Fouts to mitigate damages.

19.    That if in fact, the Plaintiffs in this action were damaged, by reason of some act or carelessness or negligence or deviation from a recognized standard of care that such injuries and damages were the result of some act or omission on the part of a party or parties not presently before the Court and not the result of any act or omission on the part of these answering Defendants.

20.    The injuries complained of by Plaintiffs in the complaint is a result of an intervening and superseding cause for which these Defendants have no responsibility as a matter of law.

21.    The injuries to JACQUELINE FOUTS were the result of a pre-existing condition unrelated to any act or omission on the part of the Defendants herein and for which they are not responsible as a matter of law.

22.    The facts and circumstances of this case do not warrant the imposition of punitive damages.

23.    An award of punitive damages in this case would serve to unconstitutionally deprive one or both Defendants of their rights to due process of law in violation of the Constitution of the United States of America and the Commonwealth of Kentucky.

24.    The Defendant, NATHAN WADE BAKER, M.D., adopts and incorporates by reference herein as if set out at length each and every term and provision of the Kentucky punitive damage statutes as a complete and affirmative defense to this action.

25.    Bradley Fouts has no cause of action against the Defendants herein as a matter of law.

26.     The Defendant, NATHAN WADE BAKER, M.D., was at all applicable times stated in the Plaintiff's Complaint an employee of Mountain Comprehensive Health Corporation, a community health center under the Public Health Services Act (42 U.S.C. 233, Sec 244 (a)) and is covered under the Federal Tort Claim Act, and is therefore not subject to the jurisdiction of this Court.

**WHEREFORE,** this Defendant, NATHAN WADE BAKER, M.D., moves the Court as follows:

1.     The Plaintiffs' Complaint be dismissed and held for naught;

2.     For his costs herein expended, including reasonable attorney fees; and

3.     For any and all other relief to which he may appear entitled.

This the _l 3_ day of December, 2012.

_(signature)_

KELLIE D. WILSON, ESQ.
103 N. First Street, Suite 301
P.O. Box 1470
Harlan, KY 40831
Tele: (606) 573-6110
Fax: (606) 573-2346
Email: kelliewilson@harlanonline.net
Page **7** of **8**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this __13__ day of December, 2012 to the following:

Michael T. Cooper
1448 Gardiner Lane
Suite 301-303
Louisville,  KY   40213

Rick King
ARH System Center
100 Airport Gardens Road
Hazard,  KY  41701

KELLIE D. WILSON

COMMONWEALTH OF KENTUCKY
47TH JUDICIAL CIRCUIT
LETCHER CIRCUIT COURT
CIVIL ACTION NO.  12-CI-00402

JACQUELINE FOUTS
and BRADLEY FOUTS,                                            PLAINTIFFS,

VS.                    MOTION TO STAY PROCEEDINGS

NATHAN WADE BAKER, M.D.;
WHITESBURG WOMEN'S CENTER, LLC;
And
APPALACHIAN REGIONAL HEALTHCARE, INC.
D/B/A WHITESBURG ARH HOSPITAL
D/B/A ARH WHITESBURG CLINIC,                      DEFENDANTS.

* * * * *

## NOTICE

   NOTICE is hereby given that the foregoing Motion will be brought

on for hearing  before the Hon. Samuel T. Wright, III, Judge, Letcher

Circuit Court, Courthouse, 156 Main Street, Whitesburg, Kentucky, on

**JANUARY 24, 2013 @ the hour of 9:00 a.m.**, or as soon thereafter as

parties may be heard.

## MOTION

   Comes the Defendant, NATHAN WADE BAKER, M.D., by and

through counsel, and hereby moves this Court to Stay Proceedings

herein.

For grounds, the Defendant states that NATHAN WADE BAKER, M.D., at all applicable times stated in the Plaintiff's Complaint was an employee of Mountain Comprehensive Health Corporation and was working within the scope of his employment and of the project.   As such, the Defendant, NATHAN WADE BAKER, M.D., states that jurisdiction has been preempted under the aforesaid acts and the Defendant, NATHAN WADE BAKER, M.D., is answerable only in Federal Court System.

The Defendant, NATHAN WADE BAKER, M.D., states that Mountain Comprehensive Health Corporation is  a community health center under the Public Health Services Act (42 U.S.C. 233, Sec 244 (a)) and is covered under the Federal Tort Claim Act as amended by the Federally Supported Health Center Assistance Acts of 1992 and 1995.

Further the Defendant, NATHAN WADE BAKER, M.D., states that the Plaintiff's action is currently being reviewed by the Center of Risk Management of the Department of Health and Human Services, United States of America, for the purpose of making a determination of

the Defendant's inclusion under the aforesaid act.

WHEREFORE, the Defendant moves this Court for an appropriate Order and for any and all other relief to which he may appear entitled.

This the ⎯⎯⎯⎯13⎯⎯⎯ day of December, 2012.

KELLIE D. WILSON, ESQ.
103 N. First Street, Suite 301
P.O. Box 1470
Harlan, KY 40831
Tele: (606) 573-6110
Fax: (606) 573-2346
Email: kelliewilson@harlanonline.net


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 13 day of December, 2012 to the following:

Michael T. Cooper
1448 Gardiner Lane
Suite 301-303
Louisville, KY 40213

Rick King
ARH System Center
100 Airport Gardens Road
Hazard, KY 41701

_____

KELLIE D. WILSON
COUNSEL FOR NATHAN WADE BAKER, M.D.,

**COMMONWEALTH OF KENTUCKY**
**LETCHER CIRCUIT COURT**
**CIVIL ACTION NO.: 12-CI-00402**

FILED
MARGARET S. NICHOLS, CLERK
JAN 2 3 2013
LETCHER CIRCUIT DISTRICT COURTS
BY _____ D.C.

JACQUELINE FOUTS
BRADLEY FOUTS

PLAINTIFFS

v.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT NATHAN WADE BAKER, M.D.'S MOTION**
**TO STAY PROCEEDINGS**

NATHAN WADE BAKER, M.D., et al

DEFENDANTS

**** **** ****

For her Response opposing the Defendant, Nathan Wade Baker, M.D.'s Motion to Stay Proceedings, the Plaintiff, Jacqueline Fouts, states as follows:

The undersigned recognizes that there are situations under the Federal Tort Claims Act, and under the Public Health Services Act, whereby a community health center may be covered by the Federal Tort Claims Act ("FTCA") and that claims against a health center and/or its employees may therefore be brought only against the United States in the federal system and in compliance with the requirements of the FTCD. However, the Defendant in its motion, has merely stated conclusory allegations in connection with their assertion that Dr. Nathan Wade Baker is an employee of the Mountain Comprehensive Health Corporation, and that the facility is a Health Resources and Services Administration ("HRSA") supported medical center which would entitle it and it's employees to the protections of the FTCA. As indicated above, the Defendant has produced no documentation which supports either of those assertions, let alone that at the time he operated on the Plaintiff, Jackueline Fouts, that he was acting within the course and scope of his employment with Mountain Comprehensive Health Corporation.

1448 Gardiner Lane, Suites 301-303 • Louisville, KY 40213 • tel: 502.459.7555 fax: 502.451.1698

In fact, the medical records which Jacqueline Fouts and her counsel reviewed prior to filing suit are devoid of any reference to the Mountain Comprehensive Health Corporation. Further, Jacqueline Fouts was not told that Dr. Baker was associated with the Mountain Comprehensive Health Corporation before, during or after her surgery. In reality, the name Mountain Comprehensive Health Corporation is noticeably absent from any documentation associated with Dr. Baker's treatment of Ms. Fouts. The only clinic or other medical facility that Dr. Baker had any association with, according to the medical records obtained from Appalachian Regional Health Care, Inc. was Whitesburg Women's Center, LLC and, of course, the Whitesburg ARH Hospital where the operation on Ms. Fouts occurred.

Further, prior to filing suit, the Plaintiff conducted an in depth investigation involving Dr. Baker. This investigation included examination of his background, and his individual listings on numerous websites. The only relationship between Dr. Baker and Mountain Comprehensive Health Corporation is listed on a Whitesburge Women's Center, LLC homepage (attached hereto) which indicates that "in 1992, he (Dr. Baker) returned to his hometown of Whitesburg, Kentucky to practice at Moutain Comprehensive Health Corporation. Dr. Bakers has been employed here (i.e. The Whitesburge Women's Center, LLC) for the past 20 years...".

In sum, it is conceivable that Dr. Baker had some association or affiliation with Mountain Comprehensive Health Corporation at the time that he operated on Jacqueline Fouts. It is also conceivable that Mountain Comprehensive Health Corporation is a community health center under the Public Health Services Act. However, there is certainly no proof in the record at this juncture regarding either such allegation.

Finally, it should be noted that 42 U.S.C. 233(I)(1) provides that "if a civil action...is filed in a State court against [a public or non-profit private entity receiving Federal Funds (or any officer,

2

governing board member, employee, or any contractor of such entity)]...for damages...the Attorney General, within fifteen days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h) of this section that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or missions that are the subject of such civil action or proceeding. The undersigned has not been provided information that any such procedure has taken place or determination made in this regard. As such he as no basis to determine the viability of the pending motion.

In summary, there is nothing before this Court which would support the pending motion other than bare, naked conclusory suggestions by the defense regarding some connection between Dr. Baker and the Mountain Comprehensive Health Corporation. These conclusory allegations are insufficient for the Plaintiff or this Court to enter the Order sought by the pending motion.

WHEREFORE, the Plaintiff, Jacqueline Fouts, requests that the Court deny the pending motion and allow discovery to proceed on all issues or, at a minimum, on the issues regarding whether the FTCA is applicable in this instance. (Such discovery is attached hereto).

Respectfully submitted,

COOPER & FRIEDMAN, PLLC

MICHAEL T. COOPER
HAL D. FRIEDMAN
Cooper & Friedman, PLLC
1448 Gardiner Lane
Suites 301-303
Louisville, Kentucky 40213
(502) 459-7555
*Counsel for Plaintiff*

3

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2013 a true copy of the foregoing was served by U.S. mail and facsimile upon:

Hon. Michael J. Schmitt
Porter, Schmitt, Banks & Baldwin
327 Main Street
Paintsville, KY  41240
(606)789-9862

Kellie D. Wilson, Esq.
103 North First Street
Suite 301
P.O. Box 1470
Harlan, KY  40831
(606)573-2346

Letcher Circuit Court
156 Main Street, Suite 201
Whitesburg, KY 41858
(606)633-5864

MICHAEL T. COOPER

4

Whitesburg Women's Center



606.633.5553

## PROVIDERS

**CLINIC HOURS**

Monday thru Thursday
8am-6:30pm

**Dr. Baker:** Mon, Wed

**Crystal Gibson:** Mon, Wed

**Jessica Branham:** Tues, Wed, Thur

**Jennifer Herrell:** Mon, Tues, Thur





### DR. NATHAN WADE BAKER

A board certified OBGYN (obstetrician/gynecologist), Dr. Baker attended the University of Kentucky for his undergraduate studies and followed with medical. In 1988, he graduated and his training continued at UK with a 4-year residency in OBGYN. Upon completion of his residency in 1992, he returned to his hometown of Whitesburg, KY, to practice at Mountain Comprehensive Health Corporation. Dr. Baker has been employed here for the past 20 years and has become known as an upstanding member of the county as well as a necessity for the medical community.



### CRYSTAL GIBSON, PA-C

Ms. Gibson has worked in conjunction with Dr. Baker for the past 9 years. A 2003 graduate from the University of Kentucky, she holds a Master's Degree in Physicians Assistant Studies. She became certified by the NCCPA (National Commission for Certification of Physician Assistants) in January of 2004. Ms. Gibson also holds a current license, and is in good standing with the KBML (Kentucky Board of Medical Licensure). Since graduation, Ms. Gibson has furthered her skills by working side by side with only one primary physician, Dr. Baker.



### JESSICA BRANHAM, DO

Originally from Floyd County, Dr. Branham completed a 4 year residency in OBGYN at the Philadelphia College of Osteopathic Medicine. She completed her undergraduate education at the University of Kentucky and is a 2008 graduate from the University of Pikeville School of Osteopathic Medicine. During her training in medical school she had rotations with Dr. Baker and saw him as her mentor. Dr. Branhams' desire has always been to return to her home and practice medicine along side her mentor and is happy to have an opportunity to do so.



### JENNIFER HERRELL, APRN, CNM

Although Ms. Herrell is a recent 2012 graduate of the Frontier Nursing University, experience is not an issue. She obtained an ADN (Associate Degree in Nursing) from Eastern Kentucky University in 1994 and has worked in the OB department as an RN for 15 years. In 2009 she earned a BSN (Bachelor of Science in Nursing) from Chamberlain College of Nursing and went on to receive her MSN (Masters Degree in Science in Nursing) with a specialty in midwifery. In March of 2012 she became nationally certified by the AMCB (American Midwifery Certification Board) and APRN (Advanced Practice Registered Nurse) and is licensed by the KBN (Kentucky Board of Nursing). Ms. Herrell has worked with Dr. Baker in the past as an RN; she is looking forward to working with him in the future as a provider.

**NOTES OF DECISIONS (53)**

Attorney fees
Certification
Claims for which immunity granted
Contractor
Employee status
Exclusiveness of remedy
Exhaustion of administrative remedies
Immunity
Jurisdiction
Limitations
Notice
Parties

Review

**§ 233. Civil actions or proceedings against commissioned officers or employees**
United States Code Annotated   Title 42. The Public Health and Welfare   Effective: March 23, 2010   (Approx. 11 pages)

Subchapter I. Administration and Miscellaneous Provisions (Refs & Annos)
Part A. Administration (Refs & Annos)

Unconstitutional or Preempted   Negative Treatment Reconsidered by   Florida ex rel. Atty. Gen. v. U.S. Dept.
of Health and Human Services   11th Cir.(Fla.)   Aug 12, 2011
Proposed Legislation

42 U.S.C.A. § 233

§ 233. Civil actions or proceedings against commissioned officers or
employees

Currentness

**(a) Exclusiveness of remedy**

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28,
or by alternative benefits provided by the United States where the availability of such
benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal
injury, including death, resulting from the performance of medical, surgical, dental, or
related functions, including the conduct of clinical studies or investigation, by any
commissioned officer or employee of the Public Health Service while acting within the scope
of his office or employment, shall be exclusive of any other civil action or proceeding by
reason of the same subject-matter against the officer or employee (or his estate) whose act
or omission gave rise to the claim.

**(b) Attorney General to defend action or proceeding; delivery of process to designated
official; furnishing of copies of pleading and process to United States attorney, Attorney
General, and Secretary**

The Attorney General shall defend any civil action or proceeding brought in any court
against any person referred to in subsection (a) of this section (or his estate) for any such
damage or injury. Any such person against whom such civil action or proceeding is brought
shall deliver within such time after date of service or knowledge of service as determined by
the Attorney General, all process served upon him or an attested true copy thereof to his
immediate superior or to whomever was designated by the Secretary to receive such
papers and such person shall promptly furnish copies of the pleading and process therein
to the United States attorney for the district embracing the place wherein the proceeding is
brought, to the Attorney General, and to the Secretary.

**(c) Removal to United States district court; procedure; proceeding upon removal deemed a
tort action against United States; hearing on motion to remand to determine availability of
remedy against United States; remand to State court or dismissal**

Upon a certification by the Attorney General that the defendant was acting in the scope of
his employment at the time of the incident out of which the suit arose, any such civil action
or proceeding commenced in a State court shall be removed without bond at any time
before trial by the Attorney General to the district court of the United States of the district
and division embracing the place wherein it is pending and the proceeding deemed a tort
action brought against the United States under the provisions of Title 28 and all references
thereto. Should a United States district court determine on a hearing on a motion to remand
held before a trial on the merit that the case so removed is one in which a remedy by suit
within the meaning of subsection (a) of this section is not available against the United
States, the case shall be remanded to the State Court: *Provided*, That where such a
remedy is precluded because of the availability of a remedy through proceedings for
compensation or other benefits from the United States as provided by any other law, the

case shall be dismissed, but in the event the running of any limitation of time for commencing, or filing an application or claim in, such proceedings for compensation or other benefits shall be deemed to have been suspended during the pendency of the civil action or proceeding under this section.

(d) Compromise or settlement of claim by Attorney General

The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677 of Title 28 and with the same effect.

(e) Assault or battery

For purposes of this section, the provisions of section 2680(h) of Title 28 shall not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations.

(f) Authority of Secretary or designee to hold harmless or provide liability insurance for assigned or detailed employees

The Secretary or his designee may, to the extent that he deems appropriate, hold harmless or provide liability insurance for any officer or employee of the Public Health Service for damage for personal injury, including death, negligently caused by such officer or employee while acting within the scope of his office or employment and as a result of the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations, if such employee is assigned to a foreign country or detailed to a State or political subdivision thereof or to a non-profit institution, and if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 2679(b) of Title 28, for such damage or injury.

(g) Exclusivity of remedy against United States for entities deemed Public Health Service employees; coverage for services furnished to individuals other than center patients; application process; subrogation of medical malpractice claims; applicable period; entity and contractor defined

(1)(A) For purposes of this section and subject to the approval by the Secretary of an application under subparagraph (D), an entity described in paragraph (4), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to paragraph (5)), shall be deemed to be an employee of the Public Health Service for a calendar year that begins during a fiscal year for which a transfer was made under subsection (k)(3) of this section (subject to paragraph (3)). The remedy against the United States for an entity described in paragraph (4) and any officer, governing board member, employee, or contractor (subject to paragraph (5)) of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a) of this section.

(B) The deeming of any entity or officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to services provided--

(i) to all patients of the entity, and

(ii) subject to subparagraph (C), to individuals who are not patients of the entity.

(C) Subparagraph (B)(ii) applies to services provided to individuals who are not patients of an entity if the Secretary determines, after reviewing an application submitted under subparagraph (D), that the provision of the services to such individuals--

(i) benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;

(ii) facilitates the provision of services to patients of the entity; or

(iii) are otherwise required under an employment contract (or similar arrangement) between the entity and an officer, governing board member, employee, or contractor of the entity.

(D) The Secretary may not under subparagraph (A) deem an entity or an officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health

Service for purposes of this section, and may not apply such deeming to services described in subparagraph (B)(ii), unless the entity has submitted an application for such deeming to the Secretary in such form and such manner as the Secretary shall prescribe. The application shall contain detailed information, along with supporting documentation, to verify that the entity, and the officer, governing board member, employee, or contractor of the entity, as the case may be, meets the requirements of subparagraphs (B) and (C) of this paragraph and that the entity meets the requirements of paragraphs (1) through (4) of subsection (h) of this section.

(E) The Secretary shall make a determination of whether an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section within 30 days after the receipt of an application under subparagraph (D). The determination of the Secretary that an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section shall apply for the period specified by the Secretary under subparagraph (A).

(F) Once the Secretary makes a determination that an entity or an officer, governing board member, employee, or contractor of an entity is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding. Except as provided in subsection (i) of this section, the Secretary and the Attorney General may not determine that the provision of services which are the subject of such a determination are not covered under this section.

(G) In the case of an entity described in paragraph (4) that has not submitted an application under subparagraph (D):

   (I) The Secretary may not consider the entity in making estimates under subsection (k)(1) of this section.

   (II) This section does not affect any authority of the entity to purchase medical malpractice liability insurance coverage with Federal funds provided to the entity under section 254b, 254b, or 256a of this title.

(H) In the case of an entity described in paragraph (4) for which an application under subparagraph (D) is in effect, the entity may, through notifying the Secretary in writing, elect to terminate the applicability of this subsection to the entity. With respect to such election by the entity:

   (I) The election is effective upon the expiration of the 30-day period beginning on the date on which the entity submits such notification.

   (ii) Upon taking effect, the election terminates the applicability of this subsection to the entity and each officer, governing board member, employee, and contractor of the entity.

   (iii) Upon the effective date for the election, clauses (I) and (ii) of subparagraph (G) apply to the entity in the same extent and in the same manner as such clauses apply to an entity that has not submitted an application under subparagraph (D).

   (iv) If after making the election the entity submits an application under subparagraph (D), the election does not preclude the Secretary from approving the application ([1] and thereby restoring the applicability of this subsection to the entity and each officer, governing board member, employee, and contractor of the entity, subject to the provisions of this subsection and the subsequent provisions of this section.

(2) If, with respect to an entity or person deemed to be an employee for purposes of paragraph (1), a cause of action is instituted against the United States pursuant to this section, any claim of the entity or person for benefits under an insurance policy with respect to medical malpractice relating to such cause of action shall be subrogated to the United States.

(3) This subsection shall apply with respect to a cause of action arising from an act or omission which occurs on or after January 1, 1993.

(4) An entity described in this paragraph is a public or non-profit private entity receiving Federal funds under section 254b of this title.

(5) For purposes of paragraph (1), an individual may be considered a contractor of an entity described in paragraph (4) only if--

(A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or

(B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

(h) Qualifications for designation as Public Health Service employee

The Secretary may not approve an application under subsection (g)(1)(D) of this section unless the Secretary determines that the entity--

(1) has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity;

(2) has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary, has obtained the permission from these individuals to gain access to this information;

(3) has no history of claims having been filed against the United States as a result of the application of this section to the entity or its officers, employees, or contractors as provided for under this section, or, if such a history exists, has fully cooperated with the Attorney General in defending against any such claims and either has taken, or will take, any necessary corrective steps to assure against such claims in the future; and

(4) will fully cooperate with the Attorney General in providing information relating to an estimate described under subsection (k) of this section.

(i) Authority of Attorney General to exclude health care professionals from coverage

(1) Notwithstanding subsection (g)(1) of this section, the Attorney General, in consultation with the Secretary, may on the record determine, after notice and opportunity for a full and fair hearing, that an individual physician or other licensed or certified health care practitioner who is an officer, employee, or contractor of an entity described in subsection (g)(4) of this section shall not be deemed to be an employee of the Public Health Service for purposes of this section, if treating such individual as such an employee would expose the Government to an unreasonably high degree of risk of loss because such individual--

(A) does not comply with the policies and procedures that the entity has implemented pursuant to subsection (h)(1) of this section;

(B) has a history of claims filed against him or her as provided for under this section that is outside the norm for licensed or certified health care practitioners within the same specialty;

(C) refused to reasonably cooperate with the Attorney General in defending against any such claim;

(D) provided false information relevant to the individual's performance of his or her duties to the Secretary, the Attorney General, or an applicant for or recipient of funds under this chapter; or

(E) was the subject of disciplinary action taken by a State medical licensing authority or a State or national professional society.

(2) A final determination by the Attorney General under this subsection that an individual physician or other licensed or certified health care professional shall not be deemed to be an employee of the Public Health Service shall be effective upon receipt by the entity employing such individual of notice of such determination, and shall apply only to acts or omissions occurring after the date such notice is received.

(j) Remedy for denial of hospital admitting privileges to certain health care providers

In the case of a health care provider who is an officer, employee, or contractor of an entity described in subsection (g)(4) of this section, section 254h(e) of this title shall apply with respect to the provider to the same extent and in the same manner as such section applies to any member of the National Health Service Corps.

(k) Estimate of annual claims by Attorney General; criteria; establishment of fund; transfer

§ 233. Civil actions or proceedings against commissioned officers or employees - WestlawNext

of funds to Treasury accounts

(1)(A) For each fiscal year, the Attorney General, in consultation with the Secretary, shall estimate by the beginning of the year the amount of all claims which are expected to arise under this section (together with related fees and expenses of witnesses) for which payment is expected to be made in accordance with section 1346 and chapter 171 of Title 28 from the acts or omissions, during the calendar year that begins during that fiscal year, of entities described in subsection (g)(4) of this section and of officers, employees, or contractors (subject to subsection (g)(5) of this section) of such entities.

(B) The estimate under subparagraph (A) shall take into account--

(i) the value and frequency of all claims for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by entities described in subsection (g)(4) of this section or by officers, employees, or contractors (subject to subsection (g)(5) of this section) of such entities who are deemed to be employees of the Public Health Service under subsection (g)(1) of this section that, during the preceding 5-year period, are filed under this section or, with respect to years occurring before this subsection takes effect, are filed against persons other than the United States,

(ii) the amounts paid during that 5-year period on all claims described in clause (i), regardless of when such claims were filed, adjusted to reflect payments which would not be permitted under section 1346 and chapter 171 of Title 28, and

(iii) amounts in the fund established under paragraph (2) but unspent from prior fiscal years.

(2) Subject to appropriations, for each fiscal year, the Secretary shall establish a fund of an amount equal to the amount estimated under paragraph (1) that is attributable to entities receiving funds under each of the grant programs described in paragraph (4) of subsection (g) of this section, but not to exceed a total of $10,000,000 for each such fiscal year. Appropriations for purposes of this paragraph shall be made separate from appropriations made for purposes of sections 254b, 254b, and 256a of this title.

(3) In order for payments to be made for judgments against the United States (together with related fees and expenses of witnesses) pursuant to this section arising from the acts or omissions of entities described in subsection (g)(4) of this section and of officers, governing board member,[2] employees, or contractors (subject to subsection (g)(5) of this section) of such entities, the total amount contained within the fund established by the Secretary under paragraph (2) for a fiscal year shall be transferred not later than the December 31 that occurs during the fiscal year to the appropriate accounts in the Treasury.

(l) Timely response to filing of action or proceeding

(1) If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) of this section or any officer, governing board member, employee, or any contractor of such an entity for damages described in subsection (a) of this section, the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h) of this section, that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. Such advice shall be deemed to satisfy the provisions of subsection (c) of this section that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

(2) If the Attorney General fails to appear in State court within the time period prescribed under paragraph (1), upon petition of any entity or officer, governing board member, employee, or contractor of the entity named, the civil action or proceeding shall be removed to the appropriate United States district court. The civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) of this section and issues an order consistent with such determination.

(m) Application of coverage to managed care plans

(1) An entity or officer, governing board member, employee, or contractor of an entity described in subsection (g)(1) of this section shall, for purposes of this section, be deemed

to be an employee of the Public Health Service with respect to services provided to individuals who are enrollees of a managed care plan if the entity contracts with such managed care plan for the provision of services.

(2) Each managed care plan which enters into a contract with an entity described in subsection (g)(4) of this section shall deem the entity and any officer, governing board member, employee, or contractor of the entity as meeting whatever malpractice coverage requirements such plan may require of contracting providers for a calendar year if such entity or officer, governing board member, employee, or contractor of the entity has been deemed to be an employee of the Public Health Service for purposes of this section for such calendar year. Any plan which is found by the Secretary on the record, after notice and an opportunity for a full and fair hearing, to have violated this subsection shall upon such finding cease, for a period to be determined by the Secretary, to receive and to be eligible to receive any Federal funds under titles XVIII or XIX of the Social Security Act [42 U.S.C.A. § 1395 et seq. or 1396 et seq.].

(3) For purposes of this subsection, the term "managed care plan" shall mean health maintenance organizations and similar entities that contract at-risk with payors for the provision of health services or plan enrollees and which contract with providers (such as entities described in subsection (g)(4) of this section) for the delivery of such services to plan enrollees.

(n) Report on risk exposure of covered entities

(1) Not later than one year after December 26, 1995, the Comptroller General of the United States shall submit to the Congress a report on the following:

(A) The medical malpractice liability claims experience of entities that have been deemed to be employees for purposes of this section.

(B) The risk exposure of such entities.

(C) The value of private sector risk-management services, and the value of risk-management services and procedures required as a condition of receiving a grant under section 254b, 254c, or 256a of this title.

(D) A comparison of the costs and the benefits to taxpayers of maintaining medical malpractice liability coverage for such entities pursuant to this section, taking into account—

(i) a comparison of the costs of premiums paid by such entities for private medical malpractice liability insurance with the cost of coverage pursuant to this section; and

(ii) an analysis of whether the cost of premiums for private medical malpractice liability insurance coverage is consistent with the liability claims experience of such entities.

(2) The report under paragraph (1) shall include the following:

(A) A comparison of—

(i) an estimate of the aggregate amounts that such entities (together with the officers, governing board members, employees, and contractors of such entities who have been deemed to be employees for purposes of this section) would have directly or indirectly paid in premiums to obtain medical malpractice liability insurance coverage if this section were not in effect; with

(ii) the aggregate amounts by which the grants received by such entities under this chapter were reduced pursuant to subsection (k)(2) of this section.

(B) A comparison of—

(i) an estimate of the amount of privately offered such insurance that such entities (together with the officers, governing board members, employees, and contractors of such entities who have been deemed to be employees for purposes of this section) purchased during the three-year period beginning on January 1, 1993; with

(ii) an estimate of the amount of such insurance that such entities (together with the officers, governing board members, employees, and contractors of such entities who have been deemed to be employees for purposes of this section) will purchase after December 26, 1995.

(C) An estimate of the medical malpractice liability loss history of such entities for the 10-

year period preceding October 1, 1996, including but not limited to the following:

   (i) Claims that have been paid and that are estimated to be paid, and legal expenses to handle such claims that have been paid and that are estimated to be paid, by the Federal Government pursuant to deeming entities as employees for purposes of this section.

   (ii) Claims that have been paid and that are estimated to be paid, and legal expenses to handle such claims that have been paid and that are estimated to be paid, by private medical malpractice liability insurance.

  (D) An analysis of whether the cost of premiums for private medical malpractice liability insurance coverage is consistent with the liability claims experience of entities that have been deemed as employees for purposes of this section.

 (3) In preparing the report under paragraph (1), the Comptroller General of the United States shall consult with public and private entities with expertise on the matters with which the report is concerned.

 (o) Volunteer services provided by health professionals at free clinics

 (1) For purposes of this section, a free clinic health professional shall in providing a qualifying health service to an individual, or an officer, governing board member, employee, or contractor of a free clinic shall in providing services for the free clinic, be deemed to be an employee of the Public Health Service for a calendar year that begins during a fiscal year for which a transfer was made under paragraph (6)(D). The preceding sentence is subject to the provisions of this subsection.

 (2) In providing a health service to an individual, a health care practitioner shall for purposes of this subsection be considered to be a free clinic health professional if the following conditions are met:

  (A) The service is provided to the individual at a free clinic, or through offsite programs or events carried out by the free clinic.

  (B) The free clinic is sponsoring the health care practitioner pursuant to paragraph (5)(C).

  (C) The service is a qualifying health service (as defined in paragraph (4)).

  (D) Neither the health care practitioner nor the free clinic receives any compensation for the service from the individual or from any third-party payor (including reimbursement under any insurance policy or health plan, or under any Federal or State health benefits program). With respect to compliance with such condition:

   (i) The health care practitioner may receive repayment from the free clinic for reasonable expenses incurred by the health care practitioner in the provision of the service to the individual.

   (ii) The free clinic may accept voluntary donations for the provision of the service by the health care practitioner to the individual.

  (E) Before the service is provided, the health care practitioner or the free clinic provides written notice to the individual of the extent to which the legal liability of the health care practitioner is limited pursuant to this subsection (or in the case of an emergency, the written notice is provided to the individual as soon after the emergency as is practicable). If the individual is a minor or is otherwise legally incompetent, the condition under this subparagraph is that the written notice be provided to a legal guardian or other person with legal responsibility for the care of the individual.

  (F) At the time the service is provided, the health care practitioner is licensed or certified in accordance with applicable law regarding the provision of the service.

 (3)(A) For purposes of this subsection, the term "free clinic" means a health care facility operated by a nonprofit private entity meeting the following requirements:

  (i) The entity does not, in providing health services through the facility, accept reimbursement from any third-party payor (including reimbursement under any insurance policy or health plan, or under any Federal or State health benefits program).

  (ii) The entity, in providing health services through the facility, either does not impose charges on the individuals to whom the services are provided, or imposes a charge

according to the ability of the individual involved to pay the charge.

(iii) The entity is licensed or certified in accordance with applicable law regarding the provision of health services.

(B) With respect to compliance with the conditions under subparagraph (A), the entity involved may accept voluntary donations for the provision of services.

(4) For purposes of this subsection, the term "qualifying health service" means any medical assistance required or authorized to be provided in the program under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.], without regard to whether the medical assistance is included in the plan submitted under such program by the State in which the health care practitioner involved provides the medical assistance. References in the preceding sentence to such program shall as applicable be considered to be references to any successor to such program.

(5) Subsection (g) of this section (other than paragraphs (3) through (5)) and subsections (h), (i), and (l) of this section apply to a health care practitioner for purposes of this subsection to the same extent and in the same manner as such subsections apply to an officer, governing board member, employee, or contractor of an entity described in subsection (g)(4) of this section, subject to paragraph (6) and subject to the following:

(A) The first sentence of paragraph (1) applies in lieu of the first sentence of subsection (g)(1)(A) of this section.

(B) This subsection may not be construed as deeming any free clinic to be an employee of the Public Health Service for purposes of this section.

(C) With respect to a free clinic, a health care practitioner is not a free clinic health professional unless the free clinic sponsors the health care practitioner. For purposes of this subsection, the free clinic shall be considered to be sponsoring the health care practitioner if--

(i) with respect to the health care practitioner, the free clinic submits to the Secretary an application meeting the requirements of subsection (g)(1)(D) of this section; and

(ii) the Secretary, pursuant to subsection (g)(1)(E) of this section, determines that the health care practitioner is deemed to be an employee of the Public Health Service.

(D) In the case of a health care practitioner who is determined by the Secretary pursuant to subsection (g)(1)(E) of this section to be a free clinic health professional, this subsection applies to the health care practitioner (with respect to the free clinic sponsoring the health care practitioner pursuant to subparagraph (C)) for any cause of action arising from an act or omission of the health care practitioner occurring on or after the date on which the Secretary makes such determination.

(E) Subsection (g)(1)(F) of this section applies to a health care practitioner for purposes of this subsection only to the extent that, in providing health services to an individual, each of the conditions specified in paragraph (2) is met.

(6)(A) For purposes of making payments for judgments against the United States (together with related fees and expenses of witnesses) pursuant to this section arising from the acts or omissions of free clinic health professionals, there is authorized to be appropriated $10,000,000 for each fiscal year.

(B) The Secretary shall establish a fund for purposes of this subsection. Each fiscal year amounts appropriated under subparagraph (A) shall be deposited in such fund.

(C) Not later than May 1 of each fiscal year, the Attorney General, in consultation with the Secretary, shall submit to the Congress a report providing an estimate of the amount of claims (together with related fees and expenses of witnesses) that, by reason of the acts or omissions of free clinic health professionals, will be paid pursuant to this section during the calendar year that begins in the following fiscal year. Subsection (k)(1)(B) of this section applies to the estimate under the preceding sentence regarding free clinic health professionals to the same extent and in the same manner as such subsection applies to the estimate under such subsection regarding officers, governing board members, employees, and contractors of entities described in subsection (g)(4) of this section.

(D) Not later than December 31 of each fiscal year, the Secretary shall transfer from the fund under subparagraph (B) to the appropriate accounts in the Treasury an amount equal to the estimate made under subparagraph (C) for the calendar year beginning in such

fiscal year, subject to the extent of amounts in the fund.

(7)(A) This subsection takes effect on the date of the enactment of the first appropriations Act that makes an appropriation under paragraph (6)(A), except as provided in subparagraph (B)(i).

(B)(i) Effective on August 21, 1996--

(I) the Secretary may issue regulations for carrying out this subsection, and the Secretary may accept and consider applications submitted pursuant to paragraph (5)(C); and

(II) reports under paragraph (6)(C) may be submitted to the Congress.

(ii) For the first fiscal year for which an appropriation is made under subparagraph (A) of paragraph (6), if an estimate under subparagraph (C) of such paragraph has not been made for the calendar year beginning in such fiscal year, the transfer under subparagraph (D) of such paragraph shall be made notwithstanding the lack of the estimate, and the transfer shall be made in an amount equal to the amount of such appropriation.

(p) Administration of smallpox countermeasures by health professionals

(1) In general

For purposes of this section, and subject to other provisions of this subsection, a covered person shall be deemed to be an employee of the Public Health Service with respect to liability arising out of administration of a covered countermeasure against smallpox to an individual during the effective period of a declaration by the Secretary under paragraph (2)(A).

(2) Declaration by Secretary concerning countermeasure against smallpox

(A) Authority to issue declaration

(i) In general

The Secretary may issue a declaration, pursuant to this paragraph, concluding that an actual or potential bioterrorist incident or other actual or potential public health emergency makes advisable the administration of a covered countermeasure to a category or categories of individuals.

(ii) Covered countermeasure

The Secretary shall specify in such declaration the substance or substances that shall be considered covered countermeasures (as defined in paragraph (7)(A)) for purposes of administration to individuals during the effective period of the declaration.

(iii) Effective period

The Secretary shall specify in such declaration the beginning and ending dates of the effective period of the declaration, and may subsequently amend such declaration to shorten or extend such effective period, provided that the new closing date is after the date when the declaration is amended.

(iv) Publication

The Secretary shall promptly publish each such declaration and amendment in the Federal Register.

(B) Liability of United States only for administrations within scope of declaration

Except as provided in paragraph (5)(B)(ii), the United States shall be liable under this subsection with respect to a claim arising out of the administration of a covered countermeasure to an individual only if--

(i) the countermeasure was administered by a qualified person, for a purpose stated in paragraph (7)(A)(i), and during the effective period of a declaration by the Secretary under subparagraph (A) with respect to such countermeasure; and

(ii)(I) the individual was within a category of individuals covered by the declaration; or

(II) the qualified person administering the countermeasure had reasonable grounds to believe that such individual was within such category.

(C) Presumption of administration within scope of declaration in case of accidental vaccinia inoculation

(i) In general

If vaccinia vaccine is a covered countermeasure specified in a declaration under subparagraph (A), and an individual to whom the vaccinia vaccine is not administered contracts vaccinia, then, under the circumstances specified in clause (ii), the individual--

(I) shall be rebuttably presumed to have contracted vaccinia from an individual to whom such vaccine was administered as provided by clauses (i) and (ii) of subparagraph (B); and

(II) shall (unless such presumption is rebutted) be deemed for purposes of this subsection to be an individual to whom a covered countermeasure was administered by a qualified person in accordance with the terms of such declaration and as described by subparagraph (B).

(ii) Circumstances in which presumption applies

The presumption and deeming stated in clause (i) shall apply if--

(I) the individual contracts vaccinia during the effective period of a declaration under subparagraph (A) or by the date 30 days after the close of such period; or

(II) the individual has resided with, or has had contact with, an individual to whom such vaccine was administered as provided by clauses (i) and (ii) of subparagraph (B) and contracts vaccinia after such date.

(D) Acts and omissions deemed to be within scope of employment

(i) In general

In the case of a claim arising out of alleged transmission of vaccinia from an individual described in clause (ii), acts or omissions by such individual shall be deemed to have been taken within the scope of such individual's office or employment for purposes of--

(I) subsection (a) of this section; and

(II) section 1346(b) and chapter 171 of Title 28.

(ii) Individuals to whom deeming applies

An individual is described by this clause if--

(I) vaccinia vaccine was administered to such individual as provided by subparagraph (B); and

(II) such individual was within a category of individuals covered by a declaration under subparagraph (A)(i).

(3) Exhaustion; exclusivity; offset

(A) Exhaustion

(i) In general

A person may not bring a claim under this subsection unless such person has exhausted such remedies as are available under part C of this subchapter, except that if the Secretary fails to make a final determination on a request for benefits or compensation filed in accordance with the requirements of such part within 240 days after such request was filed, the individual may seek any remedy that may be available under this section.

(ii) Tolling of statute of limitations

The time limit for filing a claim under this subsection, or for filing an action based on such claim, shall be tolled during the pendency of a request for benefits or

compensation under part C of this subchapter.

(iii) Construction

This subsection shall not be construed as superseding or otherwise affecting the application of a requirement, under chapter 171 of Title 28, to exhaust administrative remedies.

(B) Exclusivity

The remedy provided by subsection (a) of this section shall be exclusive of any other civil action or proceeding for any claim or suit this subsection encompasses, except for a proceeding under part C of this subchapter.

(C) Offset

The value of all compensation and benefits provided under part C of this subchapter for an incident or series of incidents shall be offset against the amount of an award, compromise, or settlement of money damages in a claim or suit under this subsection based on the same incident or series of incidents.

(4) Certification of action by Attorney General

Subsection (c) of this section applies to actions under this subsection, subject to the following provisions:

(A) Nature of certification

The certification by the Attorney General that is the basis for deeming an action or proceeding to be against the United States, and for removing an action or proceeding from a State court, is a certification that the action or proceeding is against a covered person and is based upon a claim alleging personal injury or death arising out of the administration of a covered countermeasure.

(B) Certification of Attorney General conclusive

The certification of the Attorney General of the facts specified in subparagraph (A) shall conclusively establish such facts for purposes of jurisdiction pursuant to this subsection.

(5) Covered person to cooperate with United States

(A) In general

A covered person shall cooperate with the United States in the processing and defense of a claim or action under this subsection based upon alleged acts or omissions of such person.

(B) Consequences of failure to cooperate

Upon the motion of the United States or any other party and upon finding that such person has failed to so cooperate—

(i) the court shall substitute such person as the party defendant in place of the United States and, upon motion, shall remand any such suit to the court in which it was instituted if it appears that the court lacks subject matter jurisdiction;

(ii) the United States shall not be liable based on the acts or omissions of such person; and

(iii) the Attorney General shall not be obligated to defend such action.

(6) Recourse against covered person in case of gross misconduct or contract violation

(A) In general

Should payment be made by the United States to any claimant bringing a claim under this subsection, either by way of administrative determination, settlement, or court judgment, the United States shall have, notwithstanding any provision of State law, the right to recover for that portion of the damages so awarded or paid, as well as interest and any costs of litigation, resulting from the failure of any covered person to carry out any obligation or responsibility assumed by such person under a contract with the United States or from any grossly negligent, reckless, or illegal conduct or willful

misconduct on the part of such person.

(B) Venue

The United States may maintain an action under this paragraph against such person in the district court of the United States in which such person resides or has its principal place of business.

(7) Definitions

As used in this subsection, terms have the following meanings:

(A) Covered countermeasure

The term "covered countermeasure" or "covered countermeasure against smallpox", means a substance that is--

(I)(I) used to prevent or treat smallpox (including the vaccinia or another vaccine); or

(II) used to control or treat the adverse effects of vaccinia inoculation or of administration of another covered countermeasure; and

(ii) specified in a declaration under paragraph (2).

(B) Covered person

The term "covered person", when used with respect to the administration of a covered countermeasure, means a person who is--

(I) a manufacturer or distributor of such countermeasure;

(II) a health care entity under whose auspices--

(I) such countermeasure was administered;

(II) a determination was made as to whether, or under what circumstances, an individual should receive a covered countermeasure;

(III) the immediate site of administration on the body of a covered countermeasure was monitored, managed, or cared for; or

(IV) an evaluation was made of whether the administration of a countermeasure was effective;

(III) a qualified person who administered such countermeasure;

(iv) a State, a political subdivision of a State, or an agency or official of a State or of such a political subdivision, if such State, subdivision, agency, or official has established requirements, provided policy guidance, supplied technical or scientific advice or assistance, or otherwise supervised or administered a program with respect to administration of such countermeasures;

(v) in the case of a claim arising out of alleged transmission of vaccinia from an individual--

(I) the individual who allegedly transmitted the vaccinia, if vaccinia vaccine was administered to such individual as provided by paragraph (2)(B) and such individual was within a category of individuals covered by a declaration under paragraph (2)(A)(i); or

(II) an entity that employs an individual described by clause (I)[3] or where such individual has privileges or is otherwise authorized to provide health care;

(vi) an official, agent, or employee of a person described in clause (i), (ii), (iii), or (iv);

(vii) a contractor of, or a volunteer working for, a person described in clause (i), (ii), or (iv), if the contractor or volunteer performs a function for which a person described in clause (i), (ii), or (iv) is a covered person; or

(viii) an individual who has privileges or is otherwise authorized to provide health care under the auspices of an entity described in clause (ii) or (v)(II).

(C) Qualified person

The term "qualified person", when used with respect to the administration of a covered countermeasure, means a licensed health professional or other individual who--

(i) is authorized to administer such countermeasure under the law of the State in which the countermeasure was administered; or

(ii) is otherwise authorized by the Secretary to administer such countermeasure.

(D) Arising out of administration of a covered countermeasure

The term "arising out of administration of a covered countermeasure", when used with respect to a claim or liability, includes a claim or liability arising out of--

(i) determining whether, or under what conditions, an individual should receive a covered countermeasure;

(ii) obtaining informed consent of an individual to the administration of a covered countermeasure;

(iii) monitoring, management, or care of an immediate site of administration on the body of a covered countermeasure, or evaluation of whether the administration of the countermeasure has been effective; or

(iv) transmission of vaccinia virus by an individual to whom vaccinia vaccine was administered as provided by paragraph (2)(B).

**Credits**
(July 1, 1944, c. 373, Title II, § 224, formerly § 223, as added Dec. 31, 1970, Pub.L. 91-623, § 4, 84 Stat. 1870; renumbered § 224, Nov. 18, 1971, Pub.L. 92-157, Title III, § 301(c), 85 Stat. 463; amended Oct. 24, 1992, Pub.L. 102-501, §§ 2 to 4, 106 Stat. 3268, 3270; Dec. 14, 1993, Pub.L. 103-183, Title VII, § 706(a), 107 Stat. 2241; Dec. 26, 1995, Pub.L. 104-73, §§ 2 to 5(b), 6 to 11, 109 Stat. 777 to 779, 780, 781; Aug. 21, 1996, Pub.L. 104-191, Title I, § 194, 110 Stat. 1988; Oct. 11, 1996, Pub.L. 104-299, § 4(a)(1), 110 Stat. 3644; Oct. 26, 2002, Pub.L. 107-251, Title VI, § 601(a), 116 Stat. 1664; Nov. 25, 2002, Pub.L. 107-296, Title III, § 304(c), 116 Stat. 2165; Apr. 30, 2003, Pub.L. 108-20, § 3(a) to (i), 117 Stat. 646; Dec. 6, 2003, Pub.L. 108-163, § 2(m)(1), 117 Stat. 2023; Mar. 23, 2010, Pub.L. 111-148, Title X, § 10608(a), 124 Stat. 1014.)

**Notes of Decisions (53)**

**Footnotes**

1          So in original. No closing parenthesis was enacted.

2          So in original. Probably should be "board members".

3          So in original. Probably should be "subclause".

42 U.S.C.A. § 233, 42 USCA § 233
Current through P.L. 112-207 approved 12-7-12

MAY-08-2013 03:26PM   FROM-

T-887   P.002   F-737

## COMMONWEALTH OF KENTUCKY
### 47TH JUDICIAL CIRCUIT
### LETCHER CIRCUIT COURT
### CIVIL ACTION NO.  12-CI-00402

JACQUELINE FOUTS
and BRADLEY FOUTS,                                                      PLAINTIFFS,


VS.                        NOTICE OF WITHDRAWAL


NATHAN WADE BAKER, M.D.;
WHITESBURG WOMEN'S CENTER, LLC;
And
APPALACHIAN REGIONAL HEALTHCARE, INC.
D/B/A WHITESBURG ARH HOSPITAL
D/B/A ARH WHITESBURG CLINIC,                        DEFENDANTS.

*   *   *   *   *


Please take Notice that the Defendant, NATHAN WADE BAKER,

M.D., hereby withdraws his Motion to Stay Proceedings scheduled for

hearing  before the Hon. Samuel T. Wright, III, Judge, Letcher Circuit

Court, Courthouse, 156 Main Street, Whitesburg, Kentucky, on

JANUARY 24, 2013 @ the hour of 9:00 a.m.

This the 23 day of  January, 2013.

*Kellie D. Wilson*

KELLIE D. WILSON, ESQ.
103 N. First Street, Suite 301
P.O. Box 1470
Harlan, KY  40831
Tele:  (606)  573-6110
Fax:  (606)  573-2346
Email:  kelliewilson@harlanonline.net


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 23 day of January, 2013, to the following:

Michael T. Cooper
1448 Gardiner Lane
Suite 301-303
Louisville, KY  40213
Via facsimile:  502.451.1698

Michael J. Schmidt
PORTER SCHMIDT BANKS
     & BALDWIN
327 Main Street
Paintsville, KY  41240

Letcher Circuit Clerk
ATTN:  Teresa
156 Main Street
Whitesburg, KY  41858
Via facsimile:  1.606.633.5864

_Kellie D. Wilson_

KELLIE D. WILSON
COUNSEL FOR NATHAN WADE BAKER, M.D.,